UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ASHLEY P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-678-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Ashley P. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply brief. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed applications for DIB and SSI on December 18, 2014, alleging disability beginning September 29, 2014 (the disability onset date), due to migraines, asthma, and a variety of mental impairments. Transcript ("Tr.") 13, 282, 1007. The claims were denied initially on April 28, 2015, after which Plaintiff requested an administrative hearing. Tr. 1007. On August

24, 2017, Administrative Law Judge Benjamin Chaykin ("ALJ Chaykin") conducted a video hearing from Alexandria, Virginia. Tr. 13. Plaintiff appeared and testified in Buffalo, New York, and was represented by Kelly Laga-Sciandra, an attorney. Tr. 13. Bernard M. Preston, an impartial vocational expert, also appeared and testified. *Id*.

ALJ Chaykin issued an unfavorable decision on November 6, 2017, finding Plaintiff not disabled. Tr. 13, 1141-51. On October 15, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. ALJ Chaykin's November 6, 2017 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

Thereafter, on December 13, 2018, Plaintiff filed a complaint in the United States District Court for the Western District of New York, after which the case was remanded to the Commissioner for further administrative proceedings. Tr. 1160, 1162-70. On May 14, 2020, the Appeals Council ordered a new administrative hearing. Tr. 1172, 1174.

On December 21, 2020, Plaintiff appeared and testified at a telephonic hearing[1] before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 1007, 1108-37. Plaintiff was represented by Samantha Ventura, an attorney. *Id*. Psychologist Neli Cohen, Ph.D. ("Dr. Cohen"), an impartial medical expert, also appeared and testified at the hearing, *Id*. An internal medicine medical expert was also scheduled to testify, but due to technical problems, the hearing had to be continued. *Id*.

A supplemental telephonic hearing was held on April 1, 2021, at which Plaintiff was represented by Joseph Paladino, an attorney. Tr. 1007, 1032-1107. Impartial medical experts Laura E. Hopper, Ph.D. ("Dr. Hopper"), a psychologist, and Mike Buckwalter, M.D. ("Dr. Buckwalter"), an internal medicine physician, also appeared and testified at the supplemental hearing. Tr. 1008.

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 1007.

Elizabeth C. Laflamme, an impartial vocational expert, also appeared and testified at the supplemental hearing. *Id*.

The ALJ issued an unfavorable decision on April 30, 2021, finding Plaintiff not disabled. Tr. 1007-23. On May 14, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1172-76. The ALJ's April 30, 2021 decision thus became the Commissioner's final decision, and Plaintiff subsequently commenced this action.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his April 30, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since September 29, 2014, the alleged disability onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease with herniations of the cervical and lumbar spine, asthma, migraine headaches, major depressive disorder, generalized anxiety disorder, and schizoaffective disorder-bipolar type (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in in 20 CFR 404.1567(a) and 20 CFR 416.967(a),[2] because she is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for 1 hour continuously and for 6 hours total in an 8-hour workday, stand for 20 minutes continuously, walk for 20 minutes continuously, and stand and/or walk for a combined total of up to 2.5 hours in an 8-hour workday. The claimant is able to occasionally push and pull; she is able to occasionally reach overhead bilaterally as well as frequently reach bilaterally in all other directions. The claimant is occasionally able to operate foot controls, and she is occasionally able to climb ramps and stairs. Although the claimant is unable to crawl or climb ladders, ropes, and scaffolds, she is able to occasionally balance, stoop, kneel, and crouch. The claimant is unable to work at unprotected heights, but she is able to tolerate occasional exposure to moving mechanical parts. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. In addition, the claimant is able to understand, remember, and carry out simple instructions and tasks. She is able to work in a low-stress work environment, reflected by no supervisory duties as well as independent decision-making for simple and routine tasks only, no strict production quotas (i.e., assembly-line work), and minimal changes in work routine and processes. The claimant is able to tolerate occasional interaction with supervisors, co-workers, and the general public, and she is able to participate in team or tandem work associated with simple,

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

routine, and unskilled work. The claimant will be off-task for up to 10% of an 8-hour workday, and she will be absent from work up to one day per month.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 19, 1985, and she was 28 years old, which is defined as a younger individual, age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2014 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 1007-23.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on December 18, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 1022. The ALJ also determined that based on the application for supplemental security income protectively filed on December 18, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 1023.

## ANALYSIS

Plaintiff asserts a single point of error, arguing that the ALJ erred in weighing the October 2020 opinion of Obot Obot, NP ("Mr. Obot"). *See* ECF No. 9-1 at 18-25. More specifically, Plaintiff contends that the ALJ improperly rejected Mr. Obot's opinion and failed to apply the treating opinion factors. *See id*. Accordingly, argues Plaintiff, the ALJ's RFC finding was not supported by substantial evidence. *See id*.

The Commissioner argues in response that the ALJ adequately considered Mr. Obot's opinion, as well as the other opinion evidence of record, Plaintiff's generally benign mental status examinations, and Plaintiff's activities of daily living, and substantial evidence supports the ALJ's RFC determination. *See* ECF No. 10-1 at 8-27. Further, argues the Commissioner, the ALJ appropriately explained his reasons for assigning little weight to Mr. Obot's opinion, notably that the limitations opined by Mr. Obot were unsupported by his own treatment notes and inconsistent with the record evidence as a whole. *See id.* at 17-27.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly explained his evaluation of the medical source opinions, and the ALJ's finding that Plaintiff could perform a reduced range of simple, low-stress, low contact, sedentary work was supported by substantial evidence, including the opinion evidence, Plaintiff's psychiatric and medication management treatment notes, the results of the psychiatric consultative examinations, and Plaintiff's own statements regarding her functioning and impairments,. Tr. 1014-22. Accordingly, the Court finds no error in the ALJ's RFC finding.[3]

---

[3] Because Plaintiff does not challenge the ALJ's physical RFC finding in her brief (*see generally* ECF No. 9-1), the Court declines to address these issues in this opinion. *See Patterson v. Saul*, No. 19-CV-465F, 2020 WL 5642187, at *4 (W.D.N.Y. Sept. 22, 2020) (because plaintiff's contentions were limited to the ALJ's treatment of mental impairments, any challenge to the ALJ's consideration of physical impairments was waived); *Glover v. Saul*, No. 18-CV-1186, 2020 WL 90768, at * 5 (W.D.N.Y. Jan. 8, 2020) (although the claimant asserted both mental and physical impairments in applying for disability benefits, in considering the plaintiff's action challenging the ALJ's decision, the

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

_____

court found the claim waived as to the mental impairments because the plaintiff raised issues only with regard to his physical impairments); *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v.*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's argument, the ALJ thoroughly explained his evaluation of the medical source opinions and appropriately assessed that Plaintiff was capable of performing unskilled, simple, low-stress, low contact work. Tr. 1014-21. *See* 20 C.F.R. §§ 404.1527, 416.927. Furthermore, the ALJ's rationale for the RFC finding reflects consideration of Plaintiff's treatment notes—including mental status examinations generally within normal limits despite only

intermittent counseling during the relevant period. Tr. 1014-21. The ALJ also discussed Plaintiff's psychiatric and medication management treatment notes, the results of the psychiatric consultative examinations, and Plaintiff's own statements regarding her functioning and impairments. *Id*.

Further, the ALJ's RFC finding is well supported by several opinions of record, including the opinions from the testifying medical experts Dr. Hopper (Tr. 1115-34) and Dr. Cohen (Tr. 1038-57), each of whom reviewed the entire medical record, and by the examinations and opinions from psychological consultative examiners Janine Ippolito, Psy.D. ("Dr. Ippolito") (Tr. 368-72), and Susan Santarpia, Ph.D. ("Dr. Santarpia") (Tr. 1720-27). Tr. 1017-20. The ALJ gave significant weight to Dr. Cohen's opinion; great weight to Dr. Hopper's opinion; and significant weight to the opinions of Drs. Ippolito and Santarpia. Tr. 1018-19. *See* 20 C.F.R. §§ 404.1527(c)(4), (e), (e)(2)(iii), 416.927(c)(4), (e), (e)(2)(iii) (an ALJ may consider a non-examining medical expert's opinion and find it constitutes substantial evidence if it is supported by objective medical findings); *see also Brenda H. v. Comm'r of Soc. Sec.*, No. 20-CV-01025, 2022 WL 125820, at *5 (W.D.N.Y. Jan. 13, 2022) ("The opinion of a medical expert may constitute substantial evidence in support of an ALJ's decision.") (citing *Heagney-O'Hara v. Commissioner*, 646 F. App'x 123, 126 (2d Cir. 2016); *Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (ALJ properly relied on a medical expert testimony in assessing claimant's functioning)).

First, the mental RFC finding was supported by the testimony of medical expert Dr. Hopper, who testified at the April 2021 hearing that Plaintiff could understand and carry out complex tasks, but she would be better suited to work involving simple and routine tasks, and she could handle occasional interaction with supervisors, co-workers, and the public. Tr. 1014, 1018, 1045-48. Dr. Hopper further testified that Plaintiff could work in a low stress environment, handle occasional changes and independent decision making, and she should not be subject to any strict

production quotas. Tr. 1045-46. Dr. Hopper also indicated that Plaintiff could handle team and tandem work in a simple work environment. Tr. 1046. He further testified that the record did not indicate Plaintiff would have more absences than an average employee, although she may be slightly off task during the workday due to the possibility of being distracted. Tr. 1047-48.

The testimony of medical expert Dr. Cohen also supports the RFC finding. Tr. 1017, 1019, 1115-34. Dr. Cohen testified that the record did not indicate Plaintiff had significant limitations. Tr. 1017, 1019, 1124-27. She opined that Plaintiff could tolerate occasional interactions with the general public, which accounted for increased periods of anxiety as substantiated by the record, though she did not have any limitations with respect to interacting with coworkers or supervisors because Plaintiff was consistently cooperative and friendly with treatment providers and was able to ask for help when needed. Tr. 1125-26. Because treatment records consistently showed Plaintiff's judgment was within normal limits, Dr. Cohen opined that Plaintiff would have no limitations with independent decision making. Tr. 1126. Dr. Cohen further opined that Plaintiff would be capable of occasional changes in work routine and processes, should not engage in supervisory duties, and would have no difficulties maintaining regular attendance or regular behavior at work. Tr. 1126-27.

As the ALJ explained, he accorded great weight to Dr. Hopper's opinion and significant weight to Dr. Cohen's opinion, based on their expertise, their review of Plaintiff's entire and most-recently updated file, and the consistency of their opinions with the overall medical evidence, including the opinions of multiple consultative examiners. Tr. 1018, 1686, 1744. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (explaining the factors that may be considered when deciding how much weight to give to a medical source opinion, such as examining relationship, supportability, consistency, and specialization).

Moreover, both Dr. Hopper and Dr. Cohen made explicit references to the record in explaining their opinions. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (generally, the more a source provides evidence in support of an opinion, the more weight will be given to that opinion). For instance, Dr. Hopper cited records showing no memory impairment and intact concentration during mental status examinations, despite some reported difficulties with concentration. Tr. 1041-43, 370, 1460, 1474-75, 1496-97, 1501 1567, 1723. Dr. Hopper noted that the record consistently showed Plaintiff had intact concentration, though he acknowledged instances of mild racing thoughts, which Dr. Hopper noted would have some impact on Plaintiff's ability to concentrate. Tr. 1041-43, 397. Dr. Hopper likewise explained his opinion that Plaintiff would have some difficulties adapting based on record evidence showing that Plaintiff reported feeling overwhelmed and having difficulty regulating her emotions. Tr. 1041-43, 397, 1634, 1723. Dr. Hopper also concluded that, while the record did not indicate any particular difficulty interacting with others, Plaintiff's anxiety would respond best to less supervision. Tr. 1056-57.

Similarly, Dr. Cohen explained that Plaintiff required only intermittent counseling and the record showed only short exacerbations of anxiety and depression symptoms. Tr. 1128. Yet, even during periods of exacerbations, Plaintiff's providers indicated her symptoms could be managed with conservative treatment; did not require stabilization; and did not cause functional skill deficits warranting rehabilitation. Tr. 1129, 402, 1576, 1592, 1670. Likewise, even during periods of exacerbations, and despite having only intermittent treatment, Plaintiff's mental status examinations showed she was functioning within normal limits. Tr. 1117-1120, 1128-30, 368-71, 1558, 1614, 1702. For instance, Plaintiff was consistently described as cooperative (Tr. 1119, 1122-23, 1496, 1501, 1505, 1558, 1703-04, 370, 397, 405; 1474-75, 1583), and she consistently exhibited concentration and memory within normal limits regardless of whether she was

experiencing increased symptoms or external stressors (Tr. 1119, 370, 397, 405, 1474-75, 1496-97, 1501, 1505, 1583, 1558, 1703-04). Dr. Cohen further explained that Plaintiff's social judgment and persistence indicators, such as judgment, insight, memory, and concentration, were regularly within normal limits and records did not show indications of attention deficits, including during periods of exacerbated symptoms. Tr. 1123-24, 1133, 370, 397, 405, 1474-75, 1496, 1501, 1583, 1558, 1703-04.

Dr. Cohen also acknowledged instances of mild racing thoughts, preoccupation with external stressors, and negligible conceptual disturbance, but noted these findings did not warrant further limitations, as the corresponding mental status examinations were otherwise unremarkable and behavioral observations were within normal limits. Tr. 1129-30, 397, 1474, 1567, 1583. Thus, Dr. Cohen explained that even during periods of worsened anxiety and depression, the record did not support further limitations than those outlined in his opinion, which, like Dr. Hopper's opinion, expressly accommodated periods of exacerbations. Tr. 1129. *See, e.g.*, *Garcia v. Saul*, No. 19 CIV. 3576 (GWG), 2020 WL 4742361 (S.D.N.Y. Aug. 17, 2020) (finding that the ALJ properly accounted for reports of fluctuating symptoms and other aggravating factors by limiting Plaintiff to avoiding tandem job tasks and having no interaction with the general public) (citations omitted)).

In addition to supporting their opinions with extensive citations to the record, Drs. Cohen and Hopper's opinions were consistent with the overall medical evidence, as the ALJ noted. Tr. 1018-19. As noted above, and as the ALJ discussed in the decision, the record shows that, even during periods of reported exacerbations and/or no formal mental health treatment, Plaintiff's mental status examinations were generally benign. Tr. 1015-19. For instance, Plaintiff was alert and oriented (Tr. 328, 390, 405, 491, 991, 1460, 1497, 1501, 1567, 1583, 1637-38, 1722); she

exhibited intact cognitive function and attention (Tr. 331, 397, 405, 1474-75, 1496-97, 1501, 1583, 1703); she was cooperative (Tr. 328, 390, 1460, 1474, 1496-97, 1529, 1611, 1614, 1722); she had good insight and judgment (Tr. 328, 331, 1497, 1501); she had good eye contact (Tr. 328, 331, 405, 991, 1460, 1474, 1529, 1567, 1583, 1722); and she exhibited appropriate thought content and/or process (Tr. 328, 331, 397, 405, 1496-97, 1501, 1529).

The ALJ also noted that Plaintiff experienced improvements with medications, and treatment notes indicated that she generally responded well to outpatient counseling and medication management. Tr. 1016, 311, 384, 407, 1576, 1592, 1670. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (improvement with treatment is properly considered in concluding claimant not disabled); *Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment); *see also* 20 C.F.R. § 416.926a(a)(3) (ALJ must consider the effects of medications or other treatment on a claimant's ability to function).

The ALJ also explained that he found the opinions consistent with the results of Dr. Santarpia's February 2021 psychological consultative examination. Tr. 1018, 1720-24. Dr. Santarpia observed a largely normal examination, including that Plaintiff had a cooperative demeanor and responsiveness to questions and adequate manner of relating and overall presentation; normal motor behavior and appropriate eye contact; normal speech and circumstantial and tangential thought processes, and full range and appropriate affect. Tr. 1722. Plaintiff also exhibited clear sensorium and full orientation as well as intact attention and concentration, intact recent and remote memory skills, and intact cognitive function. Tr. 1722-23. Plaintiff also reported that she was able to independently care for herself, cook, shop, clean, do

laundry, and manage money, and she was the primary caregiver to three children, ages thirteen, nine, and one. Tr. 1720.

Based on her examination, as well as a review of records (including Dr. Ippolito's March 2015 consultative examination and Mr. Obot's treatment records), Dr. Santarpia opined that Plaintiff was able to understand, remember, or apply, simple, as well as complex, directions and instructions and use reason and judgment to make work-related decisions. Tr. 1721-23. She also opined that Plaintiff would have no limitations sustaining an ordinary routine, regular attendance at work, or concentration, or performing a task at a consistent pace and mild-to-moderate limitations regulating her emotions, controlling her behavior, and maintaining her well-being, and interacting adequately with supervisors, co-workers, and the public, but this was largely due to her lack of mental health counseling. Tr. 1723-24, 1726-27. Dr. Santarpia concluded that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis and recommended vocational training and rehabilitation. Tr. 1724. The ALJ reasonably accorded significant weight to Dr. Santarpia's opinion, as it was supported by her expertise in the disability process and was consistent with her own thorough examination of Plaintiff. Tr. 1019. *See* 20 C.F.R. §§ 404.1527(c)(1), (3), (5), (6), 416.927(c)(1), (3), (5). The ALJ also found the opinion generally consistent with the record, including the opinions and testimony from Drs. Hopper and Cohen. Tr. 1019.

For the same reasons, the ALJ gave significant weight to Dr. Ippolito's opinion, noting that the opinion was well supported by Dr. Ippolito's largely unremarkable examination findings, including cooperative and appropriate behavior and social skills; normal appearance, eye contact, and motor behavior; normal speech, mood, and affect; and intact attention, concentration, memory, and cognitive functioning. Tr. 1019, 371. Dr. Ippolito opined that Plaintiff had no limitations with

respect to independent work with simple directions, instructions, and tasks, learning new tasks, maintaining attention and concentration, and making appropriate decisions; mild limitations in the ability to maintain a regular schedule; and moderate limitations relating adequately with others and appropriately deal with stress. Tr. 1017, 372. As previously noted, the RFC finding accommodates these limitations. 1014. Consistent with Dr. Santarpia's later opinion (Tr. 1724), Dr. Ippolito concluded that Plaintiff's psychological impairments did not appear significant enough to interfere with ability to function on a daily basis and recommended Plaintiff attend vocational training and rehabilitation. Tr. 372.

As the ALJ explained, he incorporated into the RFC both Dr. Ippolito's opinion that Plaintiff had moderate limitations relating with others and dealing with stress and Dr. Santarpia's opinion that Plaintiff had mild-to-moderate limitations interacting with others, regulating emotions, controlling emotions, and maintaining well-being. Tr. 1019. Thus, these opinions provide support to the ALJ's weighing of the medical expert opinions, as well as to the RFC finding. As the ALJ reasonably determined, Plaintiff's impairments caused some limitations but were not totally disabling. *See, e.g., Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020) (The opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *see also Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (finding ALJ properly assigned more weight to consultative examiner's opinion than treating source opinion).

Contrary to Plaintiff's argument (*see* ECF No. 9-1 at 21-22), where, as here, the opinions from the consultative examiners and medical experts are consistent with the record, an ALJ may credit the expert's opinion over opinions from treating sources. *See Heaman*, 765 F. App'x at 500; *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (holding that the regulations permit the

opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record); *Ridosh v. Berryhill*, 2018 WL 6171713, at * 6 (W.D.N.Y. Nov. 26, 2018) (an ALJ may assign more weight to the opinion of a non-examining source, particularly where it is better supported by the record) (citations omitted). Altogether, these opinions from Drs. Cohen, Hopper, Ippolito, and Santarpia provide substantial support for the ALJ's RFC and for the ALJ's ultimate determination that Plaintiff's impairments were not totally disabling. *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (finding the ALJ's decision supported by substantial evidence where the ALJ relied on consultative examinations, a state agency consultant's opinion, and the claimant's treatment records, which did not show any limitations beyond those outlined in the RFC).

Despite the substantial support outlined above, Plaintiff nonetheless contends that the RFC was not supported by substantial evidence, based solely on the ALJ's evaluation of Mr. Obot's October 2020 "check-the-box"[4] medical source opinion (Tr. 1546-51). *See* ECF No. 9-1 at 18-25. However, the ALJ reasonably accorded Mr. Obot's opinion little weight, noting that his opinions were inconsistent with the balance of the evidence in the record, including the well-supported opinions discussed above, as well as Mr. Obot's own treatment notes. Tr. 1020.

As an initial matter, the Court notes that Mr. Obot is not a physician, and therefore, was not an acceptable medical source whose opinion was owed deference. The ALJ needed only "generally . . . explain the weight given to opinions from [this non-acceptable medical] source[ ] or otherwise ensure that the discussion of the evidence in the determination or decision allows

---

[4] As this Court has noted previously, such check-the-box forms are of limited evidentiary value. *See, e.g., Koerber v. Comm'r of Soc. Sec.*, No. 6:19-CV-1070-DB, 2020 WL 1915294, at *1 (W.D.N.Y. Apr. 20, 2020) (citing *Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145-EAW, 2016 WL 5462836, at *1 (W.D.N.Y. Sept. 28, 2016); *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) ("[t]he standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record").

[the] claimant or subsequent reviewer to follow the [the ALJ's] reasoning." 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). The ALJ did so in this case. *See Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (an ALJ should explain the weight given to other source opinions, or otherwise ensure that the discussion of the evidence allows the claimant or subsequent reviewer to follow the ALJ's reasoning).

Mr. Obot indicated that Plaintiff had marked limitations in the ability to interact with others and adapt or manage oneself, as well as "precluded performance from 11% to 20% of an 8-hour workday" in many mental work-related functions, such as carrying out very short and simple instructions, maintaining attention for 2-hour segments, maintaining regular attendance, sustaining an ordinary routine, working in coordination with others, making simple work-related decisions, performing at a consistent pace, asking simple questions, accepting instructions, getting along with co-workers and peers, and responding appropriately to changes in a routine work setting.  Tr. 1548-50. Mr. Obot also opined that Plaintiff will be off task more than 30% of an 8-hour workday and would be absent from work more than four days per month. *Id*.

The ALJ noted that, in support of these "very significant limitations," Mr. Obot simply referenced his "treatment notes" and wrote, "[the claimant] has persistent hallucinations." Tr. 1020. However, as the ALJ highlighted, the record does not support that Plaintiff experienced persistent hallucinations, or the extent of limitations Mr. Obot assessed. Tr. 1018, 1020. Specifically, Plaintiff did not report any hallucinations until her first session with Mr. Obot on June 27, 2020 (Tr. 1496-97), and she did not repeat this concern at Dr. Santarpia's 2021 consultative examination (Tr. 1721). In fact, Dr. Cohen testified that Plaintiff had only once reported hallucinations, which was in 2020, and the record did not document any evidence of hallucinations before or after. Tr. 1118-19, 1121, 1496-97. As Dr. Cohen also explained, Mr.

Obot's corresponding mental status examination findings showed that Plaintiff had thought processes within normal limits, suggesting hallucinations were not significantly impacting her functioning. *Id*. Dr. Cohen also observed that, according to Mr. Obot's treatment notes, he did not explore Plaintiff's hallucinations; did not indicate she was responding to hallucinations; and did not show continued reports of hallucinations. Tr. 1118-19, 1121. Furthermore, Plaintiff consistently denied hallucinations prior to June 2020. *See, e.g.,* 379, 392, 481, 557, 1460, 1474, 1567, 1573, 397, 405, 413, 615, 1567, 1583.

In addition, Mr. Obot's own treatment records undermine the extreme nature of his opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *see also Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014) (record evidence of unremarkable clinical findings contradicted or failed to support the limitations in medical opinions); For example, Mr. Obot's initial examination of Plaintiff was unremarkable other than anxious mood: Plaintiff was cooperative, polite, and candid; her speech was "normal in all aspects;" and she had normal and pleasant, albeit anxious, mood. Tr. 1496-97. She also had good insight and judgment; goal-directed and logical thought process; normal thought content; alert and clear sensorium; full orientation; and average range intellectual functioning. Tr. 1496-97. Mr. Obot described Plaintiff's attitude as "cooperative, engaged, friendly, and pleasant." Tr. 1497. Moreover, Plaintiff exhibited intact cognition with normal recall; had no confabulations (erroneous memories); had good concentration, abstraction, and fund of information; and had normal attention span, language, and vocabulary. *Id*. Similarly unremarkable mental status examination findings were noted at each of Plaintiff's follow-up sessions with Mr. Obot. Tr. 1501, 1505, 1703-04. These unremarkable observations fail to support Mr. Obot's extreme limitations. Tr. 1548-49. *See Marc W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1121 (WBC),

2021 WL 2435651, at *6 (W.D.N.Y. June 15, 2021) ("[A]n ALJ may rely on inconsistencies between opinions and treatments notations in assessing opinion evidence").

The ALJ also noted that the opinion was inconsistent with the overall record evidence. Tr. 1020. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). For example, as the ALJ acknowledged, the record showed that although Plaintiff had limitations stemming from anxiety and depression, she sought only intermittent mental health treatment. Tr. 1012-14, 1016-20, 1658, 1646 1763. Furthermore, Plaintiff generally responded well to this intermittent treatment (*see, e.g.*, Tr. 331, 384, 407, 1576, 1592, 1670), and despite intermittent treatment, Plaintiff's examinations were nonetheless generally benign and within normal limits, even during periods of noncompliance with counseling and or exacerbations of anxiety and depression. Tr. 1016-17, 328, 1460, 1495-98, 1681, 1128-30.

The ALJ also reasonably considered that the opinion was inconsistent with the other medical opinions of record, in particular the opinions of medical experts Dr. Cohen and Dr. Hoppen and consulting psychologist Dr. Santarpia, all of which were informed, in part, by a review of Mr. Obot's treatment records. Tr. 1020, 1720-21, 1117-21, 1131-32, 1047-48, 1050-51.

Also contrary to Plaintiff's contention (*see* ECF No. 9-1 at 20-22), the ALJ appropriately considered Mr. Obot's treating relationship with Plaintiff and considered the *Burgess* factors[5] in his analysis, as required by the applicable regulations. Tr. 1020. In addition to being inconsistent with the balance of the evidence as previously discussed, the ALJ appropriately considered that Plaintiff's treatment relationship with Mr. Obot was brief, and therefore, not entitled to any

---

[5] *See Burgess v. Astrue*, 537 F. 3d 117, 129 (2d Cir. 2008) (An ALJ is required to consider several factors in determining how much weight an opinion should receive, including the length of the relationship and frequency of examinations, nature of the relationship, medical evidence that supports the opinion, consistency with the record as a whole, and if the physician's specialty is relevant to the impairment).

additional or extra weight. Tr. 1020. As the ALJ noted, the treating relationship began in June 2020, approximately four or five months before the medical source statement was signed. Tr. 1020, 1497-98, 1546. The record shows that Mr. Obot first saw Plaintiff on June 27, 2020, and then on August 29, 2020 and October 17, 2020. Tr. 1495-98, 1499-1501, 1503-05. Thus, Mr. Obot's October 2020 opinion was based on only three sessions with Plaintiff. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. Mar. 8, 2011) (physician who examined Plaintiff "once or twice did not see that claimant regularly and did not develop a physician/patient relationship with the claimant") (internal citations omitted); *Halloran*, 362 F.3d at 32 (length of a treating relationship is an appropriate factor for an ALJ to consider in deciding the weight to afford to treating source).

Mr. Obot's opinion was also inconsistent with Plaintiff's activities of daily living, *See Monroe*, 676 F. App'x at *8-*9 (the ALJ properly considered evidence of the claimant's activities when assessing RFC). The record shows that Plaintiff independently performed chores such as laundry, cleaning, and cooking, and could drive as needed when she had a car. Tr. 1015, 371, 421, 1084-85, 1095-96, 1708, 1723. The record also reflects that Plaintiff independently cared for herself and was the sole caregiver to three of her children, the youngest of which was two years old at the time of the 2021 hearing. Tr. 371, 421, 1082-84, 1090-92, 1582, 1619, 1708, 1723. *See Monroe*, 676 F. App'x at 7 (upholding the ALJ's rejection of the sole, restrictive opinion by the claimant's treating source and RFC determination, where the source's own unremarkable clinical findings failed to support the opinion and the claimant's recreational activities were inconsistent with the opinion while corroborating the RFC); *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (ALJ properly discounted opinion inconsistent with reported activities).

Plaintiff challenges the ALJ's analysis of the conflicting opinion evidence with respect to her mental functioning by suggesting that having a handful of positive mental status findings is

inherently totally disabling, despite mostly normal mental status findings throughout the record. *See* ECF No. 9-1 at 22-25. First, Plaintiff relies largely upon her own subjective reports in arguing she had further limitations. *See id*. (citing Tr. 334, 393, 379, 1495-96, 1499, 1504, 1568, 1653, 1702). Plaintiff also relies upon mental status examinations and treatment records that reflect periods when she was not receiving mental health treatment, despite repeated referrals to treatment. *See id*. (citing Tr. 328, 1460, 1634, 1640, 1646, 1763, 379, 415, 1377, 1474, 1495, 1594, 1611, 1613, 1625, 1631, 1653, 1658, 1679). *See Diaz-Sanchez v. Berryhill*, 295 F.Supp.3d 302, 306 (W.D.N.Y. 2018) (plaintiff's failure to seek treatment for an alleged impairment suggests that the associated symptoms and limitations were not serious).

Furthermore, to the extent treatment notes cited by Plaintiff show any positive clinical findings and/or reported abnormal behavioral observations, this mostly occurred during periods when Plaintiff experienced situational life stressors, such as family and housing issues, which fail to support Plaintiff's allegation of disabling mental impairments. Tr. 1571, 1592-93, 1611, 1619, 1634, 1676, 1679-80), 1702, 1755, 1053-55. *See Morgan v. Colvin*, No. 6:14-cv-0549 (LEK), 2016 WL 3527907, at *15 (N.D.N.Y. June 23, 2016) (situational stressors are not a basis for a finding of disability); *Christine M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01226-MJR, 2022 WL 130900, at *5 (W.D.N.Y. Jan. 14, 2022) (collecting cases) ("Deficits in mental health brought upon by situational stress are not necessarily disabling.").

Although Plaintiff cites some findings that she argues could be interpreted differently (*see* ECF No. 9-1 at 22-25), this is insufficient to support a finding that the ALJ erred in assessing Plaintiff's RFC. The fact that the evidence may have been weighed differently, or that there may be a reasonable interpretation of the evidence in Plaintiff's favor, is not probative. *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015). The only question is whether the ALJ's findings are supported

by substantial evidence. Here, the ALJ's RFC finding is well-supported by the record and Plaintiff's generalized contentions of error are insufficient to meet her burden of showing greater limitations. Thus, Plaintiff's arguments are simply a request for a reweighing of the evidence in her favor, which is inappropriate under the substantial evidence standard of review. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Accordingly, Plaintiff's argument is without merit.

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the treatment history, mental status examination findings, opinion evidence, and Plaintiff's wide range of activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE